**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JESSE KENT, individually and on behalf of all others similarly situated, and derivatively on behalf of ROADRUNNER TRANSPORTATION SYSTEMS, INC.,**
**Plaintiff,**

**v.** **Case No. 17-C-0893**

**CURTIS W. STOELTING, et al.,**
**Defendants,**
**and**

**ROADRUNNER TRANSPORTATION SYSTEMS, INC.,**
**Nominal Defendant.**

---

**DECISION AND ORDER**

In a prior order, I granted preliminary approval to the parties' settlement of shareholder derivative suits involving Roadrunner Transportation Systems, Inc. *See* ECF Nos. 80 & 81. Following preliminary approval, the parties provided notice of the settlement to shareholders. No shareholder filed an objection to the settlement, and the parties now move for final approval of the settlement and an award of attorneys' fees and expenses to plaintiffs' counsel. As I explain below, the settlement and award of fees and expenses are reasonable and will be approved. I also address state-court plaintiff Richard Flanagan's request that his counsel be allocated 15% of the fee and expense award.

## I. BACKGROUND

The derivative actions arise out of Roadrunner's restatement of its financial reports in 2017. The restatements followed the the company's discovery of accounting

discrepancies relating to a series of corporate acquisitions. The derivative suits allege that, during this time, Roadrunner lacked adequate internal controls to prevent the accounting discrepancies from occurring. The suits name Roadrunner as the nominal defendant and allege various claims, such as breach of fiduciary duty, against the officers and directors of Roadrunner allegedly responsible for these events.

Two derivative suits were filed in this court, and a third was filed in Wisconsin state court. The state-court action, which was filed by Richard Flanagan, was the first derivative suit to be filed. But it was not the first suit arising out of the restatement to be filed. By the time Flanagan filed his suit, a federal class-action suit against Roadrunner alleging violations of the securities laws had already been filed. A short time after Flanagan filed his derivative action, he and the defendants agreed to stay the state-court action pending further developments in the securities case.

Around this time, the parties to the three derivative actions and the securities litigation agreed to mediation. The mediator was a retired district court judge, Layn R. Phillips. Following a lengthy mediation period, the parties reached an agreement to settle all claims. The settlement of the derivative actions consists of a $6.9 million cash payment that will exhaust the available insurance coverage for the acts of Roadrunner's officers and directors. It also includes Roadrunner's agreement to institute and/or maintain certain corporate governance reforms that are designed to prevent future losses of the sort that precipitated these suits. Finally, as part of the settlement of the derivative actions, Roadrunner agreed to pay $2.1 million in attorneys' fees and expenses to plaintiffs' counsel.

The parties chose to formalize the settlement of the derivative actions under the caption of the federal derivative case. However, counsel for state-court plaintiff Flanagan was invited to participate in the joint mediation sessions. As part of his participation, Flanagan's counsel made a written settlement demand. The demand included an unspecified amount of monetary relief and a proposal that Roadrunner implement various corporate governance reforms. According to Flanagan's counsel, he was the first to demand "most" of the governance reforms that were eventually included in the federal settlement. Decl. of Eric L. Zagar ¶ 9, ECF No. 93-1. After making his written settlement demand, Flanagan's counsel attended a mediation session and met privately with counsel for some of the independent director defendants. Flanagan's counsel states that, during this private meeting, counsel for those defendants told him that Roadrunner's board of directors would agree to a settlement that included many of his proposed reforms. However, the same counsel told him that they expected counsel for the federal-court plaintiffs to make their own proposals, which they would also have to consider. *Id.* ¶ 11. Flanagan's counsel states that, after he attended the initial mediation session, he "kept in regular contact with counsel for the independent director Defendants to monitor the progress of settlement negotiations, which were ongoing." *Id.* ¶ 12. He states that he also participated in a telephonic mediation session on October 22, 2018, but he does not identify any specific step that he took during the session to further the mediation effort. *See id.* ¶ 15.

Counsel for the federal plaintiffs contend that they were solely responsible for negotiating the settlement of the derivative actions. In their declaration, they state:

> At no time during our settlement discussions did either of us see the settlement demand served upon the Settling Defendants by State Court

> Plaintiff Richard Flanagan. Nor were we ever aware of any specific terms or conditions Mr. Flanagan sought from [Roadrunner] or the Settling Defendants in any of his settlement communications with the Settling Defendants. Accordingly, the content of the settlement demand did not in any way inform our negotiation of the terms of the Settlement.
>
> The [settlement agreement] and the substantial benefits it provides [Roadrunner] are the product of protracted, complex settlement negotiations between the Federal Action plaintiffs and defense counsel, which were closely overseen by the mediator, Layn R. Phillips. Neither State Court Plaintiff Flanagan, nor his counsel, participated in these hard-fought settlement negotiations[,] and the resulting [settlement agreement] was in no way influenced or contributed to by State Court Plaintiff Flanagan or his counsel.

Joint Decl. of Benny C. Goodman III & Stephen J. Oddo ¶¶ 3–4, ECF No. 96.

While the settlement was being negotiated, a grand jury indicted two of the former Roadrunner executives alleged to be responsible for the accounting fraud underlying this suit, Bret Naggs and Mark Wogsland. At the time of the indictment, neither executive was named as a defendant in the derivative suits. When Flanagan's counsel learned of the indictments, he drafted an amended complaint adding Naggs and Wogsland as defendants to the state-court action. Flanagan's counsel later moved for, and received, permission to lift the stay of the state-court action for the purpose of filing the amended complaint. Counsel for the federal plaintiffs did not immediately amend the federal complaint to add Naggs and Wogsland as defendants. However, the settlement they negotiated recognized that Naggs and Wogsland were potential defendants, and it released any claim that Roadrunner might assert against them. Counsel for the federal plaintiffs stated at the fairness hearing that if settlement negotiations had failed, they would have moved to add Naggs and Wogsland to the federal suits.

On October 24, 2018, Flanagan's counsel sent defendants' counsel an email notifying them that Flanagan intended to take steps to lift the stay of the state-court action and proceed with the litigation. Zagar Decl. ¶ 16. Flanagan's counsel does not explain why he decided to abandon the mediation and proceed with the state-court case. *See id.* In any event, the parties to the federal action informed the federal court that they had reached a settlement in principle before Flanagan resumed litigating his case. The defendants then asked the state court to keep the stay in place until the federal settlement could be finalized. The state court granted the defendants' request, and the state case has been stayed ever since. *Id.* ¶ 17.

When the federal plaintiffs moved for preliminary approval of the settlement, Flanagan filed an objection in which he argued that certain aspects of the settlement rendered it unfit for preliminary approval. In a prior order, I found that Flanagan had not shown that the settlement was outside the range of possible approval, and I granted the federal plaintiffs' motion for preliminary approval. *See* ECF No. 80. When the federal plaintiffs filed their motion for final approval, Flanagan did not renew his objections to the settlement. However, Flanagan filed a brief in which he requested that the court allocate 15% of the attorneys' fee and expense award to his counsel. The federal plaintiffs oppose the request.

## II. DISCUSSION

### A. Approval of Settlement and Attorneys' Fees and Expenses

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." In reviewing derivative settlements for approval, courts employ the same procedures used

to review settlements of class actions under Rule 23. Federal courts naturally favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although such settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate. *Id.* The factors the court should consider when assessing whether the settlement is fair "include the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Id.* at 1199.

Here, the relevant factors favor settlement approval. The claims against the defendants appear to be strong, but $6.9 million is also a substantial cash settlement. Moreover, litigating the case all the way to trial carries risks, and collection of a favorable judgment is not a foregone conclusion. The defendants to the derivative suits are individuals, and the settlements of the derivative action and the securities action will together exhaust the insurance coverage available to them. No evidence suggests that Roadrunner would likely be able to collect a judgment above the policy limits from the defendants. Finally, in addition to the cash payment, the settlement includes Roadrunner's agreement to institute or maintain corporate governance reforms for seven years. These "corporate therapeutics" provide a further benefit to Roadrunner's shareholders. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396–97 (1970). The lack of opposition to the settlement—there is none—further supports its fairness, as does the

opinion of competent counsel. Although Flanagan and his counsel objected to preliminary approval, they did not renew their objection to the settlement at the final-approval stage. Thus, it appears that the lone objectors to the settlement have changed their minds.

I also conclude that the plaintiffs' request for attorneys' fees and expenses should be approved. Under the "substantial benefit" doctrine, counsel who prosecute a derivative case that confers benefits on the corporation are entitled to an award of attorneys' fees and costs. *See, e.g., Mills*, 396 U.S. at 391–97. Here, the same factors that support approval of the settlement also support counsel's fee award. Moreover, plaintiffs' counsel worked on a contingent-fee basis and thus assumed a significant risk of nonpayment, which must be reflected in the fee award. *See, e.g., Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). Finally, the manner in which attorneys' fees were negotiated supports approval. Plaintiffs' counsel first obtained the $6.9 million in cash from the defendants and their insurers. Roadrunner and plaintiffs' counsel then separately negotiated the amount of the defendants' cash payment that would be paid to counsel. Roadrunner would have an interest in minimizing the fee award it paid to plaintiffs' counsel for their efforts on behalf of the corporation and its shareholders. Thus, unlike in some class-action litigation, here the fee award was the product of arms' length negotiations between parties who were interested in the division of settlement proceeds between attorneys' fees and relief to the suit's beneficiaries. *Cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (observing that, in class actions, "[d]efendants are interested only in the total costs of the settlement to them,

and not in the division of the costs between attorneys' fees and payment to class members").

Accordingly, I will approve both the settlement and the award of attorneys' fees and expenses to plaintiffs' counsel.

**B. Flanagan's Fee Request**

In requesting 15% of the fee award, Flanagan's counsel states that a district court should compensate counsel for work that he or she actually performed that benefitted the class. Flanagan Br. at 2, ECF No. 93 (citing *Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 134 (3d Cir. 2011)). Here, the record shows that Flanagan's counsel performed work: he filed the state-court action, submitted a mediation statement on behalf of his client, and participated to some extent in the mediation sessions. However, the record does not enable me to conclude that this work provided a benefit to Roadrunner's shareholders that they did not receive from the work of counsel for the federal plaintiffs.

The state and federal derivative actions were entirely duplicative of each other, in that a single suit would have been enough to obtain complete relief for Roadrunner and its shareholders. Flanagan's counsel points out that he was the first to file a derivative action against Roadrunner once the accounting discrepancies came to light. However, he does not contend that the federal plaintiffs copied his complaint or that they should be deemed to be free riders on his work. Moreover, nothing in the record suggests that the state-court case was the catalyst for the federal action.

Flanagan notes that he took the extra step of naming Naggs and Wogsland as defendants to the state-court action once they were indicted. But this was only a

formality that did not provide a tangible benefit to the shareholders. At the time of the indictments, the state and federal cases were on hold pending the results of mediation. Naggs and Wogsland did not need to be formally added as defendants to the federal or state actions for their potential liability to be factored into any settlement. If the mediation ended without a settlement, the parties could at that time have taken steps to add Naggs and Wogsland as defendants. But the mediation was successful, and the resulting settlement recognized that Naggs and Wogsland were potentially liable. Thus, Flanagan's naming Naggs and Wogsland as defendants to the state-court action did not provide a benefit to shareholders.

Similarly, the record does not show that Flanagan's participation in the mediation provided a benefit to shareholders. Flanagan's counsel made a written settlement demand and then attended mediation sessions and monitored the mediation's progress. However, his mediation statement did not make a specific monetary demand, and the record does not suggest that Flanagan was involved in negotiating the settlement's monetary component. Flanagan's counsel was the first to propose that Roadrunner adopt many of the corporate governance reforms. However, the record does not enable me to conclude that the benefits of the corporate reforms are attributable to his efforts. Counsel for the federal plaintiffs swear in their declaration that they were the ones solely responsible for negotiating the settlement. They swear that they never saw Flanagan's mediation statement. I have no reason to think that counsel for the federal plaintiffs are lying and that, in fact, they used Flanagan's proposal as a template for their own proposal. Moreover, any similarity between Flanagan's proposal and the corporate reforms included in the final settlement is likely attributable to Roadrunner's having

already adopted some of the reforms prior to the mediation, *see* Zagar Decl. ¶ 9, and the additional reforms being natural extensions of the existing ones. The other participants in the mediation—defendants' counsel and Judge Phillips—have not submitted evidence suggesting that Flanagan's proposal served as a template for the reforms that became part of the final settlement. Thus, I cannot find that Flanagan's mediation statement resulted in a benefit to shareholders.

In finding that Flanagan's counsel has not shown that he is entitled to a percentage of federal counsel's fee, I do not mean to minimize his efforts in filing the state-court complaint and being willing to litigate if the mediation had been unsuccessful. However, for whatever reason, the federal action eclipsed the state-court case, and all the work that resulted in the settlement appears to have been performed by federal counsel. Once the federal case was filed and the parties focused their efforts on mediation, the state-court action became duplicative and resulted in no separate benefit to shareholders. Accordingly, Flanagan's request for 15% of the fee award will be denied.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiffs' motion for final approval of the derivative settlement and attorneys' fee and expense award (ECF No. 85) is **GRANTED**. This action is dismissed with prejudice, and the Clerk of Court shall enter final judgment.

**IT IS FURTHER ORDERED** that Richard Flanagan's request for attorneys' fees is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2019.

s/Lynn Adelman
LYNN ADELMAN
District Judge